
George C. Paine, II
US Bankruptcy Judge
Dated: 03/10/11



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE:<br><br>**MATTHEW ALAN CRIM**<br>**DONNA MECHELLE CRIM**<br>　　Debtors. | Case No. 10-10246<br>Chapter 13<br>Hon. Marian F. Harrison<br>Hon. George C. Paine, II by interchange |

## MEMORANDUM

This matter is before the court on Henry E. Hildebrand, Standing Chapter 13 Trustee's (hereinafter "trustee') objection to the Matthew Alan Crim and Donna Mechelle Crim's (hereinafter "debtors") Motion to Modify their Chapter 13 Plan. The trustee objects that the debtors are seeking to reduce the distribution to unsecured creditors from 100% to 30% while maintaining private school tuition payments. The trustee contends such an expense is not reasonable and necessary for the maintenance or support of the debtors or their dependents. The court finds that the Motion to Modify the Plan as proposed by the debtors is hereby GRANTED for the reasons contained herein.

The debtors filed their chapter 13 bankruptcy petition on September 22, 2010. Their plan proposed to $2,240.00 semi-monthly through payroll deduction for Mr. Crim. The debtors confirmed a plan on November 15, 2010 that required a semi-

monthly payment of $2,584.50. According to Mrs. Crim's testimony, the increase in payments was due to BAC Home Loans Servicing LP's (hereinafter "BAC") home mortgage claim being higher than anticipated. One month later, the trustee filed a motion to modify the debtors' plan to increase semi-monthly plan payments from $2,584.50 to $2,756.25 semi-monthly because of an increase in the continuing mortgage payment to BAC. The debtors filed a competing Motion to Modify that proposed to decrease their plan payment to $2,290.00 bi-weekly. Under the debtors' modification, the increased home mortgage payment to BAC would be paid, but the previously confirmed 100% dividend to unsecured creditors would be reduced to approximately 30%. The trustee objected to the debtors' proposed modification because the debtors' expenses included a $500 per month payment for private school tuition.

Mrs. Crim testified that prior to bankruptcy, she and her husband went to a consumer credit counseling service and attempted for a year to make payments on all their debts. She explained that the debtors fell about month behind on their home mortgage payment to BAC Home Loans, and received an offer from BAC to make ½ mortgage payments for six months. The debtors accepted that offer, and also applied to the government's "Making Home Affordable" program. Mrs. Crim testified that after making the partial payments, BAC would no longer negotiate with her. In her opinion, she felt BAC had "set them up" for failure by offering the partial payment option and then refusing to discuss the loan with her or her husband. When BAC threatened foreclosure, the debtors consulted their bankruptcy attorney.

The Crims assumed, based on their proposed plan, that their semi-monthly payments would be about $2,240, but confirmation required the payments to

increase to $2,584.50. The trustee's requested modification would have required semi-monthly payments to increase by an additional $171.75 to accommodate the increased home mortgage payment. Mrs. Crim testified that since filing their petition, the Crims have taken all possible measures to try to fund their plan as confirmed including: (1) no tithing at church; (2) absolutely no eating out; (3) all lights are turned off at night; (3) keeping their thermostat at 65°; (4) buying generic dog food; (5) clipping coupons; and (6) taking any and all other cost saving measures they can. Mrs. Crim explained that when she and her husband actually tried to survive on the remaining money after paying their chapter 13 plan, they realized they had underestimated their medical expenses for their two chronically ill daughters, and therefore seek the current modification.

The Crim's older daughter is sixteen, and attends public school, but suffers from Type I Diabetes. The Crim's younger daughter is fourteen, and attends a small private school, but suffers from a painful condition called Juvenile Rheumatoid Arthritis. The younger daughter switched from public school to private school after she was diagnosed with her chronic illness. According to Mrs. Crim's testimony, their daughter was crying every day; begging her parents not to go back to the public school; was suffering from pain; was being teased; and, after two weeks in the public school, had a nervous breakdown. According to Mrs. Crim, the medical effects of her daughter's attendance in public school were lethargy, and increased symptoms from her Juvenile Rheumatoid Arthritis. The Crims asked the Sumner County School Board to allow their daughter to transfer to another public school, but were denied. Mrs. Crim, who testified that they could not afford to home-school, found the least expensive private school near their house that would accept their daughter. Their daughter is now settled, doing well, and excelling in the private school.

3-U.S. Bankruptcy Court, M.D. Tenn.

Case 3:10-bk-10246    Doc 54    Filed 03/10/11    Entered 03/10/11 12:51:32    Desc Main
Document      Page 3 of 6

The debtors' budget, reflecting the changes in expenses, nets a total of $208 in increased expenses, but keeps the private school tuition payment as an alleged reasonable and necessary expense. The $208 decrease in plan payment coupled with the increased continuing mortgage payment to BAC creates a net loss to unsecured creditors from their 100% dividend down to an approximately 30% dividend.

The criteria for approval of a proposed modification are set forth in § 1329(b)(1). That section provides:

**11 USC § 1329. Modification of plan after confirmation**
...
(b)(1) Section 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.

11 U.S.C. § 1329(b)(1). A proposed modified plan should satisfy the general requirements for confirmation such as the good faith requirement, the "best interest of creditors" test, and the feasibility test. 11 U.S.C. § 1325(a)(3),(4), and (6). By its terms, however, § 1329 does not incorporate § 1325(b) of the Bankruptcy Code. Consequently, the "projected disposable income" test, as set forth in § 1325(b), does not expressly apply to modified plans under § 1329. **In re Hill**, 386 B.R. 670, 676 (Bankr. S.D. Ohio 2008)[1]. "For purposes of evaluating a modified plan,

---

[1] The application, or lack thereof of, the disposable income test to plan modification is hardly a settled question. In Lundin & Brown's Chapter 13 Treatise, the authors note that:

> Although arguments from statutory construction can be made to capture § 1325(b) as an applicable test at modification after confirmation, reported decisions before BAPCPA split sharply, leaving open the question whether the disposable income test in § 1325(b) applies at modification after confirmation under § 1329.

**Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 506.1, at ¶ 12, Sec. Rev. Mar. 29, 2006, www.Ch13online.com**. However, this

therefore, the debtor's income and expenses are not calculated according to the method provided by § 1325(b) and § 707(b)(2) of the Bankruptcy Code.  Instead, the debtor's actual income and expenses at the time of the proposed modification are used to determine whether the payments should be adjusted." **In re Prieto**, 2010 WL 3959610 (Bank. M.D. Fla., Sept. 22, 2010).

As noted by the court in **In re Cleary**, 357 B.R. 369 (Bankr. D.S.C. 2006), the allowance of private school tuition as a reasonable and necessary expense is not settled law:

> Prior to enactment of BAPCPA the courts were split on the subject of the reasonableness of private school tuition as a deduction from income to arrive at disposable income. . . The fulcrum was to balance creditor's rights against the appropriate basic needs of the debtors and their dependents.

**Cleary**, 357 B.R. at 371(citations omitted).  Post BAPCPA, the cases are also divided, and most cases turn on the specific facts after an examination of reasonableness and necessity in the context of sustaining the basic needs of the debtor and the debtor's dependents.[2]  In other words, a balancing test still applies.

---

court finds that in this context, plan modification is not covered by the disposable income test.  Even if the court is incorrect and these above-median income debtors had to satisfy §707(b)(2) via §1325(b), the court would find that the debtors are entitled to their $500 monthly tuition payments pursuant to §707(b)(2)(A)(II) and (IV) as proven monthly educational expenses up to $1,775 per year and all tuition costs above that amount approved as actual expenses incurred to care for a chronically ill dependent.

[2] For post BAPCPA cases allowing private school tuition expense, **see e.g., In re Burgos**, 248 B.R. 446 (Bankr. M.D.Fla. 2000)(paying as much to unsecured creditors as expense of tuition, always attended parochial school, strong religious beliefs, debtors retained no real estate); **In re Nicola**, 244 B.R. 795 (Bankr.N.D.Ill.2000)(some evidence of inadequate local schools and long term attendance of debtor's children at private school);**In re Bottelberghe**, 253 B.R. 256, 264 (Bankr. D. Minn. 2000) (allowing relatively small amount of $246 as reasonable and necessary for tuition for parochial school); **In re Webb**, 262 B.R. 685 (Bankr. E.D.Tex. 2001)(special needs child); **In re Villegas**, 2004 WL 3623504, at *1 (Bankr. D. Utah Oct. 5, 2004) (finding long-standing attendance and fact that private school kept children away from drugs and alcohol made private school tuition reasonable).

Based Mrs. Crim's credible testimony, the court finds that the debtors have shown that the $500 tuition cost is a reasonable and necessary expense for their chronically ill, younger child. Mrs. Crim's provided compelling testimony that no other public school option is currently available.[3] Furthermore, the court finds that the Crims have taken every possible measure to repay their unsecured creditors as much as they can afford, and their sacrifices, along with other circumstances, form, in part, the basis for allowance of private school tuition.[4] The fulcrum in this case tips the balance in favor of the debtors' tuition expense.

The court finds that the debtors' entire expense of $500 per month is reasonable and necessary. Accordingly, the court hereby, GRANTS the debtors' Motion to Modify their chapter 13 plan, and overrules the objections raised by the trustee. The court instructs counsel for the debtors to prepare an order not inconsistent with this court's ruling within seven (7) days of entry of the court's Memorandum.

---

[3] Under prior BAPCPA law, the absence of alternatives has served as a basis for the necessity of a private school tuition expense. **See In re Nicola**, 244 B.R. 795 (Bankr. N.D.Ill. 2000).

[4] **See, In re Cleary**, 357 B.R. 369 (Bankr. D.S.C. 2006) ("family sacrifice of other basic expenses to fund private school is noteworthy, and in this case, the deciding factor for the court in approving the necessity and reasonableness.").

6-U.S. Bankruptcy Court, M.D. Tenn.

This Order has Been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.

Case 3:10-bk-10246   Doc 54   Filed 03/10/11   Entered 03/10/11 12:51:32   Desc Main Document      Page 6 of 6